Okay. Mr. Asaraf? Yes, Your Honor. Okay. We'll hear from you now. Thank you. Thank you. Good morning, Your Honors. May it please the Court. This case turns on a single word that Congress chose, by. So here we're looking at whether Mr. Lopez's paternity was established by legitimation. We say that it was not. So under old section 1432 I hate to do this but we do actually have to decide what I mean, everyone agrees we have jurisdiction over one of these PFRs but no one agrees about which PFR. So I do have to ask you a couple questions about that. Just to remind me again, in your view, which of the PFRs do we have jurisdiction over? I think post Riley, Your Honor, you have jurisdiction over the second petition for review. To be candid with the Court, I filed the initial petition for review because there was this sort of uncertainty. To me the question is whether Riley abrogates Cuombo such that we have jurisdiction over PFR 1. What I'm calling PFR 1 is 24-1208. I guess what I'm reading, Riley, I think about finality and non-final orders. I think given, when you kind of go look at the BIA's decisions, even they are not ordering him removed. And so I think Riley's considering these sort of reinstatement cases where you're having somebody be placed in withholding only. I think that is what Riley is focused on. There's some real broad language in Riley that goes way beyond that context. I agree, Your Honor, and that's why I felt the need to file the protective petition for review because I was scared that given Martinez, given Riley, given the sort of development. And also, wait, can I go back to something you said that struck me as wrong? The BIA, in the remand order, ordered him removed. They just remanded for consideration of whether he gets protection under the CAT. They ordered him removed in Order 1, right? I don't believe so in the July 2022 order, Your Honor. They said it was remanded for further proceedings. Further proceedings about CAT. That's correct, Your Honor. Not further proceedings about whether he's removable. I agree, and I still think there is a real question here. If you say under Nasrallah that the removal order is separate from the CAT order. Which is what Riley tells us that, right? I agree with that, but that's what I'm saying. At what point, if they're being adjudicated together, and in terms of judicial efficiency. No, no, Riley says we're not doing judicial efficiency. The argument that Riley rejected pretty forcefully is like, well, this doesn't make a darn bit of sense because it will create traps to the end where it will be wildly inefficient. And Riley is like, yeah, I know. Sometimes things are crazy. Riley rejects the precise argument that this. And more importantly, I think Riley pretty much rejects the exact argument we made in Colombo. Which is, this is crazy. We should wait until the end. Don't split these things up. They're one proceeding. That is Colombo. And then Riley says, with all respect, no. None of those things. And we don't have to really rewrite the majority to say that. The dissent says that. The dissent says, we've just done something crazy here. Things are going to not make sense anymore. So it seems like that's the law. And why doesn't that make the September 1st, 22 order the final order of removal? I guess I would say that's the IJ's order ordering him removed, Your Honor. Maybe I have my dates wrong. I thought that September 22nd was the BIA, was the board's order. I thought that was July 22nd. There is an argument, I would argue, under Santos-Zacharia, that the government's waived sort of the equitable tolling arguments, and so we're still probably before the court. Yeah, you'd say the other part of Riley is it's not jurisdictional. It's claims processing. And the government never made that argument. They never made it was final. In fact, they said this really doesn't matter because we got jurisdiction under the January 25 order. So to the extent there was a finality order, it's been forfeited by the government. Correct, Your Honor. And I would also say the issue of citizenship is so important that the court could accept it that way as well, Your Honor. So do you agree after Riley that that 22 order is the final order of removal, or are you not comfortable conceding that? I mean, to be honest, Your Honor, I'm not sure. I'm uncertain. And, again, that's sort of the reason I felt the need to file what I viewed as a protective petition for review in the 24 case. But, however, as the court noted, the government concedes that through one of these vehicles, they have a second petition for review that the court can hear the case and the court has jurisdiction over this matter. So turning to Section 1432, if you look at Section 1432, the whole purpose of it is to protect the custodial rights of a parent, of a noncitizen parent, in case a mother was to naturalize and, therefore, deprive them of any ability to contest that custody. If you look at the change. So I know there's a bunch of cases that say this, but we just really don't do statutory interpretation that way anymore. We don't say, like, let's think about what this provision is designed to do and then figure out what's the best way to do it. I realize there are cases that are written that way. I will say I don't find those cases especially persuasive because I don't think that's how we interpret statutes in 2025. Well, then I would take a very textualist approach, Your Honor, and say by. Like, what does the by mean? Because if you read it the government's way, then you would have to make it an and. So you'd have to say that his paternity was established in 1981 when he was born. And then later, this thing that the father had no participation in in 1983 passes and he's legitimated. So great. His paternity was established in 1981 and he may have been legitimated in 1983. I dispute sort of that his paternity was established by legitimation in 1983 because, again, you would have to bend time and space to get there. In other words, if you didn't have the birth certificate, the legitimation by law wouldn't have established paternity. Right. At the time he was born, and I don't think this is disputed, he was born a natural-born child. Nobody's ever argued that his paternity was established by legitimation at his birth. And so, you know, I understand Looper Bright and that, you know, now the courts are not necessarily deferring to the agency. However, I do think Cross is persuasive in both distinguishing between the definition of legitimate in 1101 and paternity established by legitimation in 1432. And I think that, you know, Congress knew how to write by. And so by putting by in there, they said that we're giving it an entirely different meaning here. And so. Well, and it's not just by. I mean, the statute doesn't ask me whether he is legitimate or not, whatever that means. It asks me if his paternity has been established by legitimation. Right. And this is your point about by. You were saying it's combining two questions. But even that buys into the notion that under the statute it matters at all whether he's, quote, a legitimate child or not. But the statute doesn't ask me whether he's a legitimate child in some sense of the Salvadoran family code. It asks me whether the paternity of the child has been established by legitimation. Right. So who cares if he's legitimate or not in some abstract sense? I agree, Your Honor. And I think another way to kind of look at this is when you're looking at other things that are considered in derivative naturalization or automatic acquisition is look at the term out of wedlock. So you're either born in it or out of wedlock. There's no, you know, you are or you aren't. And so afterwards, if those parents were to get married, that doesn't retroactively make you born in wedlock. So I don't ask people. Go ahead. So the 1994 family code, it's your contention, is not retroactive. It's only forward-looking. I think it's only forward-looking. And then I know that the government filed a 28-J yesterday arguing that, well, it doesn't matter because he wouldn't have automatically acquired or derived citizenship until 1998. I dispute that because he was in the United States in 1992. And so typically where the child is domiciled and resides is the law that we're looking at to determine custody. And if we're concerned about custody in 1432, then the custodial rights had already been bestowed to his mother, and there was no way for the father to have contested custody at that point. I have a question about burden of proof here. Barrani, I think that's how you pronounce it, and other precedents say the government bears the burden of proof as to removability of a lawful permanent resident and an even higher burden when it comes to stripping of citizenship. So are we looking at this through the lens of the government bearing the burden of proof? In other words, to show that he's not a citizen? I think they're typically removal proceedings, there's a presumption of noncitizenship, and then it's the burden on the noncitizen. In Barrani, I read it as, you know, if there's a dispute on facts, the tie does not go to the noncitizen. And I would argue that there's no dispute of facts here. Everybody agrees he was born out of wedlock. Everybody agrees he was born a natural-born child. Everybody agrees he got his lawful permanent residence in 1992. And everybody agrees his mother naturalized in 1998. So I don't really see the applicability of Barrani here because I don't see a dispute in facts. So on the retroactivity point, I want to focus on that. If Lopez was legitimated by the changes in the law, whether it's retroactive would inform that. It might matter whether it goes backwards or whether it only applies in the future, like you said, 18. I can see it being an issue if we're just asking whether he was legitimated by those law changes. But those law changes don't establish paternity. There's nothing about them that establishes paternity that I can see. I agree, Your Honor. And so we have to look for the ways. It seems to me we should have a list of ways a child could be legitimated. There's probably five, six, seven. I don't know. And do any of them establish paternity? And it seems like if the way you're legitimated is changes in law, if that's one of the ways, that's a way you can be legitimated, as I rethink, but it just doesn't establish paternity. So it doesn't fit within this statute. I agree. What does? Establish paternity, Your Honor. Is there a way to become legitimated that establishes paternity? Yes, Your Honor. So at the time that he existed, everybody agrees that his paternity could have been established by legitimation through the marriage of the parents. I think given local jurisdictions' rules, there may be other ways that you can do that. I imagine you could go to able courts. But that's the quintessential way, as in a couple conceives a child when they're not married. The child is born when they're not married. And at some point after the child is born, the couple gets married. And that's the sort of classic common way we establish legitimation of a child that was born out of wedlock. Yes, Your Honor, but I don't think it's the only way. No, but that's like the quintessential most classic way that we did this back when we cared more in law about these things than we do now. Right. And if you go look at the Congressional Senate report that we cited from 1950, that's what they seemed to think at the time when they were writing these laws. That's all fine, but those reports we can look at, and maybe that's right there. But just a little small add-on about that. Does the marriage need to involve some acknowledgment of the child, some acknowledgment by the father that he is the father? Again, not to go back to the Senate report, but that is what they said in there. But I think it was dependent upon the local jurisdiction where they got married. Because presumably you could marry someone who already had a child with someone who was not in fact your child. And by getting married to that person, I'm not now claiming that that person is my biological child. Right. Yeah, I understand that. And again, that's what El Salvador would have required at the time that he was born. And going to Judge Qualbom's point kind of about what happens going forward or going back, the law change in 1983 never removed those distinctions for the people. So I think there's a gap for the people born in 1965 to 1983. If you were a natural-born child, just because you have your rights restored to your parents doesn't necessarily make that you're no longer a natural-born child. It didn't remove those classifications. It only removed the legal distinctions between children having rights to their parents. It never touched parental rights to their children. So we submit, Your Honors, that this case should be vacated. He should be released. He should be ordered to be a U.S. citizen. And then we would ask that you send this back to the agency so that they can vacate the removal order. Thank you. Thank you. Mr. Pennington. Good afternoon. Yes, sir. Greg Pennington for the Attorney General. It is afternoon now. I'll start by tackling which petition presents the final order of removal. And I'm going to stick with my motion to dismiss that it is the second petition. So I'll start with Riley. What's the date? What's the – you said the second petition. In our question, what's the date of the order? Right. It's the government's position that the final order of removal in this case is the 2025 board decision. Now, if you were to accept what I think was Mr. Lopez's argument in the beginning, that a remand for Catt presents the board's final order, even though it's going back to the immigration judge on the torture convention claim, that would be a September 1, 2022 order. There the board affirmed, adopted, and affirmed the immigration judge's decision on the citizenship, and it affirmed the criminal grounds of removability. So if you were to accept that that's the final order, then that is way untimely. Neither of these petitions was untimely. Well, it might be way untimely, but you never objected to it. You didn't move to dismiss under it. And it's not jurisdictional after Riley. Right, and it's the government's position that the 2025 order is the final order of removal. And the definition, the statutory definition of final order of removal ties finality to agency review. Riley itself noted that. And so when the board remands to the – Was there anything in that order about citizenship, or was that just a final order that addressed Catt? In the 2025 order? Yes, sir. I think you could construe it as Mr. Lopez seeking to have the citizenship reconsidered, because the board does say that we'd find no reason to disturb our prior order on citizenship. But as long as the board – the board has held this for, you know, 40, 50 years. Whenever it remands to the immigration judge, it divests itself completely of jurisdiction. So it goes back to the immigration judge for further review of whatever issues it found in the immigration judge's decision. But it's not limited to that. I mean, there's multiple scenarios where – And this is not fighting Riley in what sense? Because this just seems to me like we're trying to relitigate Riley. We're not, because Riley was completely different. Riley dealt with expedited removal procedures under – I know that is the factual situation involved in Riley, but that is not under court. When I read the court's opinion, there's not like this is a really specific rule to these really specific things. That is not what the court says in Riley. I agree Riley was written broadly, but you have to look in the context it was written. There, the order of removal was issued by the Department of Homeland Security. And they said that's the final order of removal, because you can't appeal that order to the Board of Immigration Appeals. The immigration judge can't review that. Once the department issues that order, it's final. Whether or not you're later placed into a withholding-only removal proceeding where you can seek relief that doesn't affect that final order of removal, that has no effect on the Department of Homeland Security's order. But these are removal proceedings under 8 U.S.C. 1229 where aliens are provided the full panoply of rights to call witnesses, cross-examine witnesses, apply for any forms of relief from removal that would affect the finality of the order of removal. And take, for instance, Mr. Lopez's case. Although the board found multiple times issues on the Convention Against Torture claim, it remanded. Things happen. You know, he was charged with criminal grounds of removability. That is an ever-evolving area of law. This court could have chimed in on the Virginia statutes of conviction saying that those are not grounds of removability. He could have been found no longer removable. So those are issues tied to the removal order. And until the board answers in the affirmative that the immigration judge's decision is, you know, either free of all clear error or law, then we don't have a final order of removal in that sense. And that's why Riley is distinguishable. And we believe that nothing in Riley or Nasrallah implicitly or explicitly overrules Cuombo. We believe Cuombo controls this case. And to an extent, the court's citation of Garcia in the issue statement before hearing, there we had multiple, like in this case, remands from the board to the immigration judge on withholding of removal proceedings. But that case is also pre-Riley, right? Like, so if the view that, I'll just say, I'm inclined to be, maybe those decisions were still good law pre-Riley, but that Riley just demolishes all of them, the fact that we cited after Nasrallah but before Riley doesn't really help you. Because if my view is that the case that finishes this off is Riley, an unexplained citation to an earlier decision post-Nasrallah but pre-Riley doesn't really get you anywhere. I agree Riley upended what we thought about everything. But we are going to stick with under removal proceedings, under 1229, where the board issues the final order of removal. And again, Riley says, you know, this whole finality issue and the statutory definition of final order of removal is tied to agency review. So as long as agency review can still happen, which it does in 1229 proceedings until the board issues its final order, then we believe that presents the final order. Can I take you to the merits? Yes. I sort of previewed this with the other side. It just strikes me that the board's entire approach to this rests on a fundamental misreading of the statute. And I want to explain why and then give you an opportunity to try to tell me why I'm wrong. The board seems to think that the question is, like, whether someone is legitimate or not in a general sense. But the statute, the language, you know the relevant language of the statute. The relevant language of the statute does not say whether you're legitimized or legitimate or out of wedlock or older, more colorful terms that we generally try not to use anymore. But the question of the statute is, and the paternity of the child has been established by legitimation. It strikes me that when El Salvador says all children in El Salvador are legitimate, well, great, that's maybe a good thing for human progress and decency. But it doesn't establish the paternity of a single person. It tells me no one's paternity. It tells me, telling me everyone is legitimate. So one of the reasons we used to care a lot about paternity no longer matters is not the same thing as telling me that I've established the paternity of every child in El Salvador because it seems transparently obvious it didn't do that because just use one example that springs obviously to mind is the like completely absent unknown father situation. This statute doesn't establish anyone's paternity. If in a situation where the birth mother never knew the father's name and the child never knew the father's name and declaring the child legitimate doesn't establish that child's paternity. What is wrong with that? Well, most of the board decisions... I'm not asking about the board decisions. I'm asking what is wrong with all of... The whole argument the board makes is just dead wrong because it fundamentally misinterprets the statute because that's not what the statute says. Why is that wrong? Because paternity can be established by legitimation through the change in law. How does El Salvador declaring all children... I mean, again, I guess we'll just use the term because it was common in Game of Thrones. There are no bastards in El Salvador. That's essentially what they've said. But that doesn't establish anyone's paternity. It just establishes that the legal disabilities that used to come with being an out-of-weblock child no longer apply to you. But that doesn't tell me who your father is. It would be the natural father even if the father... What if I don't know who he is? You haven't... I think the point is once that law change happens, then if someone wants to take advantage of it and they establish paternity some other way, then the combination of those two things gives them rights. But if the biological father here had not signed the birth certificate, hypothetical, that's what happened. We have no birth certificate. All we have is the change of law. And Mr. Lopez is not in the United States. He's in El Salvador. And he says, I want support. And he goes, I'm going to this guy. I want support. And he says, I'm not the father. Being legitimated didn't establish paternity. He has to establish paternity the normal way you do paternity. Is that right? There would have to be some kind of process in the country. Therefore, the legitimation did not establish paternity because, as you say, there has to be another process to do that. Yeah, and I guess in that sense, no father's rights would be protected under this statute, the alien father's rights, because you could never establish paternity by legitimation in a society where there is no legitimate versus illegitimate children. So to read – Say that? I'm not sure I understood what you just said. I think you kind of alluded to this. Is there a way to establish paternity by legitimation? Yeah, you get married, and you get married, and the father says, you know, this is my son. I'm marrying the mother. You're legitimate, and we're married. And typically, like when Congress wrote this statute in 1952, that was probably the understood term, but they didn't say in the later marriage or paternity established by later marriage. If that was the only way, I don't know. Maybe there are other ways. They could have listed out the ways. But they did say that the legitimation – I get tongue-tied all the time with this – but the legitimation must establish paternity. And I don't see how the change of law establishes paternity at all. Yeah, and the board in Matter of Ways, I think a 1970 decision, talked about how legitimation, you know, as it was commonly defined, did not talk about just marriage. And it surveyed multiple countries about how it could be done through judicial decree. But you've just gone back. You've gone back to saying that the question is legitimation. That's not what the relevant question under this statute is, unless you convince me otherwise, which we haven't done, that the statute says paternity by legitimation, not legitimacy, like, in the abstract. That's not the question this statute says is the relevant question. But you still have to have some kind of paternity. I mean, you have to establish – Not only have to establish. The statute says we have to establish – So, okay. So the statute says, the broader clause says, the birth mother is naturalized. That's condition one. And condition two is the paternity of the child – And then the second clause is, and the paternity of the child has not been established. But then the statute keeps going, as your friend on the other side says, by legitimation. So we have to establish the child's paternity and under this provision, we have to establish paternity in a specific way by legitimation. That's what the statute says. So we look to the four laws to determine what establishing paternity means. Establishing paternity by legitimation means – But if a country does not have legitimation – Then this provision doesn't apply to people from that country. Which is pretty much every country, which would read out the whole purpose of the statute. Every country today or every country in 1952? Well, I think when the board surveyed it, there was only a handful of countries that had the traditional distinction where you had to get married in order to legitimate the child. Right. And look, we've just been talking about Riley and how they said something. And the reasoning there was, regardless of what you agree, is the statute says something. And it may create a situation that doesn't make a lot of sense. But when the statute says something, we're judges, not statute writers. So we applied. This statute says paternity established by legitimation. And it seems to me you're conceding that the legitimation that you say is relevant here didn't establish paternity. I would concede that you have to look at the board's decisions on legitimation and how that is established. We're in a post-Loper Bright world. At best, the board's opinion is relevant to the extent we find it persuasive. And I would argue it is persuasive. The board has been writing on this for 50 years in both the visa context and in the acquired citizenship context. The board's decisions are well-reasoned. They apply the same tools of statutory construction that the Loper Bright tells us to look at, the Oxford Dictionary. I mean, since it's well-reasoned, maybe I'm – how do they say that legitimation change in the law establishes paternity? They just say that's not required? Well, they say when a country has abolished the distinction between legitimation and illegitimate children, that suffices for them to not qualify for acquired citizenship. Okay, so then let me give you this hypo. We've talked about the unknown father. So consider a situation where the identity of the biological father is completely unknown. It's completely unknown and unknowable, and attempts to determine that person's identity have been a complete, miserable failure. We have not been able to do that. Under your view of the changes in Salvadoran law, could that child – and assume the other – that child's birth mother becomes a naturalized U.S. citizen. Is that child a citizen or not? And the Salvadoran law that you talked about passed. Like, we abolished the distinction. Is that child a U.S. citizen? They would not be eligible for acquired citizenship. Wait, so a person that we literally can't establish their paternity through any means whatsoever is knocked out by a provision that says where the paternity has been established by legitimation? That is a bizarre statutory interpretation. I'm not in crazy town here. That is crazy town. That's not what the legislation says. The First Circuit in Miranda, the Third Circuit in Brandau, the Fifth Circuit in Irohita, the Ninth Circuit in Cala de Leon. But doesn't it just ignore the English language? I mean, maybe it's a good policy reason. Maybe everyone's doing it. Maybe if we want to be like the others, we should join them. But if you just read the English language, doesn't it ignore what Congress wrote? I would say that El Salvador has already taken that part out of it for us. They have done – Whoa, whoa, whoa. I'm sorry. I'll let you answer. But El Salvador can't take away what Congress says the law is. Well, we have to look at the foreign law. I mean, we have to determine what bi-legitimation means in numerous countries. Well, actually, no. At the end of the day, the question of what it means in – what title of the U.S. Code is this? 40 – I don't know. So, 8. Title 8. The question of what the words established by legitimation mean in Title 8 is a matter of U.S. federal law, right? And then we have to look to foreign law to decide whether what it does meets the definition under U.S. law. In the same way that, like, whether something is or is not property is determined by the Internal Revenue Code in the 14th Amendment and the 5th Amendment, not by whatever states choose to say is property, right? You agree with that, right? The ultimate question of what this means is U.S. – is federal law. Right. And bi-legitimation means to take a child born out of wedlock and place them in the same legal – That's what legitimation means. That's not what it means to establish paternity by legitimation. Correct. But when the country that we're looking to doesn't have a process to establish paternity by legitimation – Well, then this provision simply doesn't apply. Well, why don't they? Why is the example that your colleague said they get married and the biological dad gets married? Maybe it doesn't have to be the biological dad. But certainly the biological dad later gets married to the biological mother and acknowledges the son. Why is that not, number one, legitimation and also establishing paternity at the same time? That could if that's what the law provided. Here, El Salvador provides that there are numerous ways under the family code to – There's numerous ways to establish legitimation, and there's numerous ways to establish paternity. The statute requires us to link those two up, right? I think there are two parts. There's paternity and legitimation. Which your colleague says is you're saying we don't read established by. Those are like two parts. Number one, do paternity. Number two, do legitimation. That's what you say. I think that's the only way to give true meaning to every word there is you have to – first, you know, the whole statute was to provide rights to both alien parents, the naturalized mother and the father. You heard what I said to your colleague on the other side. I just don't think in the year 2025 we're going to get very far by saying the whole purpose of this statute was to blank. Well, I mean, if that's one of the legislative tools when you're trying to – Yes, but Nish Chavez says – I mean, the Supreme Court said it a whole bunch of times. But Nish Chavez says it very, very clearly, I mean, which is perhaps a recurring theme of the government in these immigration cases. Like, the government keeps telling the Supreme Court, like, but the way the immigration laws are supposed to work. And the Court's like, stop telling me how these are supposed to work. You know the language from Nish Chavez. At the end of the day, no amount of policy talk can overcome statutory text. And I think what several of our questions say is, like, I just don't see under the statutory text how this provision possibly applies there. Yeah, I just – under the facts of this case, we have a father that did place his name on the birth certificate. But you basically said that's irrelevant. Well, it is relevant if that's the process in the foreign country to establish – But he wasn't living in the foreign country at the time. So you're saying at the time he's living in the United States in 1994 with his mother, but the law of the country of his birth is going to apply to establish his paternity retroactively more than a decade earlier? Well, all conditions have to be met at the time of the last factor. Here was the naturalization of the mother in 1998. So if some of the – The question is whether the 1994 law applies to establish his paternity at the time of naturalization. Yes, we would look to the 1994 law to see whether paternity has been established. And you're suggesting that the 1994 law applies to an individual that's not living in the country where the law was passed at the time? Well, I don't think that was ever litigated, whether we would apply the law of El Salvador at that time, or I think it was all – the only issue was whether – The whole argument that Mr. Lopez made below was marriage. It was all about marriage. Because there wasn't a marriage here, he even offered to get an affidavit from his father during the removal proceeding to say he never married the mother. And so now we're here, we're opening up a lot of can of worms that were not raised below. We would say that all of those laws apply. He's agreed that the father has acknowledged him, that his father is his father. He just wants to say that they have to have been married in order to meet the bi-legitimation. That finds no support in the statute. And in order to read the statute to give meaning to all the terms, we have to have some rights for the father. And if there's no process for bi-legitimation, when the father acknowledges and establishes paternity, that should be enough to disqualify him for citizenship. My time is out. Thank you. Thank you, Counsel. Unless the Court has any other questions, we'd rest on the record. Any other questions? Thank you, Counsel. Thank you, Counsel. Thank you, Your Honors. Okay. We appreciate everyone being here. We appreciate, Mr. Osorio, your pro bono work and service to our profession that we have from folks who do that. We appreciate the government's great work and sound arguments as well. So thank you both. We'll come down and greet Counsel. But before that, I've asked the Clerk to join us until tomorrow morning. This honorable Court stands adjourned until tomorrow morning. God save the United States and this honorable Court.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, Nicole G. Berner